# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| FIRST NATIONAL BANK, a national chartered bank, | ) ) ) |
| Plaintiff, | ) ) ) No. 04 C 8143 |
| v. | ) ) Judge Ronald A. Guzmàn |
| EL CAMINO RESOURCES, LTD., a California corporation, | ) ) ) ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

First National Bank ("FNB") has sued El Camino Resources, Ltd. ("El Camino") for breach of a security agreement and default of a loan. Before the Court is El Camino's motion to dismiss for lack of personal jurisdiction pursuant to Federal Rules of Civil Procedure 12(b)(2) and (3), or, in the alternative, to transfer the action pursuant to 28 U.S.C. § 1404(a). For the reasons set forth below, the Court denies both motions.

## Facts

FNB is a nationally chartered bank with its principal place of business in Illinois. (Compl. ¶ 1.) El Camino is a California corporation with its principal place of business in California. (*Id.* ¶ 2.) On October 21, 2004, FNB loaned money to El Camino to fund an equipment lease that El Camino made as lessor to Cyberco Holdings, Inc. (the "Cyberco lease transaction"). (*Id.* ¶¶ 6, 8.) To obtain the loan, El Camino contacted banks it had worked with in the past, as well as an Illinois broker, John Sweeney of S&S Financial. (Def.'s Mot. Dismiss 8.) It was Sweeney who put El Camino in touch with FNB for the purposes of the loan at issue. (*Id.*)

The non-recourse promissory note memorializing the loan has a maturity date of August 1, 2007 and provides for eleven quarterly payments commencing on February 1, 2005. (Compl. ¶ 7.) FNB alleges that El Camino breached the corresponding security agreement and defaulted on the loan by failing to obtain good title to the collateral and by failing to have the collateral delivered to and accepted by the lessee and kept at the lessee's address. (*Id.* ¶ 16.) El Camino, along with numerous other businesses, was allegedly defrauded by Cyberco Holdings, Inc., in a scam that is currently under investigation by the U.S. Department of Justice. (*Id.* ¶ 17.)

## Discussion

### I. Motion to Dismiss for Lack of Personal Jurisdiction

When a motion to dismiss is to be decided solely on written materials, the plaintiff need only make a *prima facie* case for personal jurisdiction. *Neiman v. Rudolf Wolff & Co., Ltd.*, 619 F.2d 1189, 1190 (7th Cir. 1980). In doing so, "all well-pleaded jurisdictional allegations in the complaint are accepted as true unless controverted by affidavit." *Travelers Cas. & Sur. Co. v. Interclaim (Bermuda) Ltd.*, 304 F. Supp. 2d 1018, 1021 (N.D. Ill. 2004). "Any conflicts in the pleadings and affidavits are to be resolved in the plaintiff's favor, but the court accepts as true any facts contained in the defendants' affidavits that remain unrefuted by the plaintiffs." *Interlease Aviation Investors II (Aloha) L.L.C. v. Vanguard Airlines, Inc.*, 262 F. Supp. 2d 898, 905 (N.D. Ill. 2003); *see also RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1275 (7th Cir. 1997).

Two inquiries are necessary to determine if an Illinois court can exercise personal jurisdiction over a nonresident defendant: (1) whether Illinois' long-arm statute permits *in personam* jurisdiction and (2) whether the assertion of jurisdiction under the long-arm statute

would be inconsistent with due process. *Daniel J. Hartwig Assocs., Inc. v. Kanner*, 913 F.2d 1213, 1216 (7th Cir. 1990). Under Illinois' long-arm statute, Illinois courts may exercise jurisdiction on "any other basis now or hereafter permitted by the Illinois Constitution and the Constitution of the United States." 735 ILL. COMP. STAT. 5/2-209(c). "[T]here is no operative difference between the limits imposed by the Illinois Constitution and the federal limitations on personal jurisdiction." *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 715 (7th Cir. 2002).

## A. General Jurisdiction

"[G]eneral jurisdiction allows a defendant to be sued in the forum regardless of the subject matter of the litigation." *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 787 (7th Cir. 2003). It is permitted "only where the defendant has continuous and systematic general business contacts with the forum." *Id.* (quotations omitted). "Those contacts must be so extensive as to make it 'fundamentally fair to require [defendant] to answer in any [Illinois] court in *any* litigation arising out of *any* transaction or occurrence taking place *anywhere* in the world.'" *Travelers Cas.*, 304 F. Supp. 2d at 1025 (quoting *Purdue Research*, 338 F.3d at 787). Several factors are considered in making this analysis:

> (1) whether and to what extent the defendant conducts business in the forum state;
> (2) whether the defendant maintains an office or employees within the forum state;
> (3) whether the defendant sends agents into the forum state to conduct business;
> (4) whether the defendant advertises or solicits business in the forum state; and
> (5) whether the defendant has designated an agent for service of process in the forum state.

*Interlease Aviation Investors*, 262 F. Supp. 2d at 906-07. General jurisdiction is a demanding standard that is "considerably more stringent than that required for specific jurisdiction."

3

*Purdue Research*, 338 F.3d at 787; *see Griffith v. Wood Bros.*, No. 04 C 3118, 2004 WL 2418296, at *8 (N.D. Ill. Oct. 27, 2004).

El Camino maintains no offices or employees in Illinois and has no agents designated for service of process in Illinois. (Def.'s Mot. Dismiss, Ex. A, Austin Wong Decl. ¶ 3.) Moreover, on June 9, 2003, El Camino filed an Application for Certification of Withdrawal and Final Report with the Illinois Secretary of State, surrendering its authority to transact business in Illinois. (*Id.*, Ex. 1, Application for Certification of Withdrawal and Final Report.) Notwithstanding these facts, FNB asserts that general jurisdiction exists because, since June 2003, El Camino has: (1) made "at least twenty" phone calls to "probably five individuals" in Illinois; (2) traveled to a conference in Chicago and solicited business from "five to six" institutions while there; (3) solicited financing from Sweeney concerning another prospective lease transaction; and (4) employed Illinois counsel to file a lawsuit seeking a tax refund from Illinois in an Illinois court. (Pl.'s Supplemental Opp'n Def.'s Mot. Dismiss 4-5.)

To satisfy general jurisdiction requirements, "the business done by the defendant in Illinois . . . [must] continue up to the time of suit, and . . . evidence a purpose on the part of the defendant to avail himself of the protection of the laws of Illinois." *Asset Allocation & Mgmt. Co. v. W. Employers Ins. Co.*, 892 F.2d 566, 570 (7th Cir. 1989). However, "[t]he decision to withdraw from a state is not equivalent to actual withdrawal." *Id.* Relying on this language, FNB asserts that the June 9, 2003 application to the Illinois Secretary of State did not effectuate a complete cessation of El Camino's business within Illinois but rather just indicated the start of a gradual decline in its business here. (Pl.'s Opp'n Def.'s Mot. Dismiss 5.)

In *Asset Allocation & Management Co. v. Western Employers Ins. Co.*, defendant sold

insurance in Illinois up until a year and a half before the commencement of the litigation. 892 F.2d at 570. However, despite accepting no new insurance business in Illinois, defendant "remained obligated to pay losses to the holders of existing, unexpired policies." *Id.* Evidence was available of losses paid out for the first quarter of 1988, but not available for April or May of that year, and the case was filed in May. *Id.* Thus, the record was incomplete as to whether defendant was still doing business in Illinois at the time the suit was filed. *Id.* The court found that the defendant's decision to withdraw did not necessarily constitute an immediate cessation of business but "merely inaugurated a gradual, albeit inexorable, decline," and thus the case was remanded to determine whether defendant was still doing substantial business in the state. *Id.* at 571.

*Asset Allocation* is clearly distinguishable from the instant case. The defendant in *Asset Allocation* made payments to multiple holders of unexpired policies. These payments were made pursuant to the business obligations he undertook when he decided to sell insurance to Illinois citizens. In contrast, the instant case involves payments made pursuant to one contract. The contract is not a holdover from some previous business scheme as the *Asset Allocation* contracts were, but just a single, isolated contract that a California business made with a bank headquartered in Illinois.

FNB also alludes to several solicitations made by El Camino of Illinois individuals or businesses. In doing so, they argue that twenty phone calls to five individuals, soliciting business from five to six institutions while attending a conference in Illinois, and soliciting additional loans through Sweeney ought to subject El Camino to general jurisdiction in Illinois.

In *Neiman v. Rudolf Wolff & Co.*, plaintiff was an Illinois citizen and defendants were

citizens of the United Kingdom, one a corporation and the other the corporation's individual agent. 619 F.2d at 1190. While visiting Illinois, the agent contacted an Illinois commodities broker about a cash-and-carry program to be carried out through the agent's principal. *Id.* at 1191. Thereafter, the two had several conversations about the program, and transactions between them ensued in late 1973, 1974 and 1975. *Id.* Specifically, during 1974, the Illinois broker "placed orders for various customers that resulted in approximately twenty-five cash-and-carry transactions." *Id.* In 1974, plaintiff approached the broker and was told about the program. *Id.* Meetings ensued between the plaintiff and the agent, until late 1974, when plaintiff placed four orders with the broker, who by that time had moved to Florida. *Id.* at 1191-92. Plaintiff subsequently placed three more orders directly with the agent. *Id.* at 1192. Plaintiff alleged other contacts with Illinois as well, including a meeting between an investor and the agent that resulted in $49 million of cash-and-carry transactions. *Id.* at 1192. The *Neiman* court held that "[m]ere occasional solicitation does not subject a defendant to the state's jurisdiction generally." *Id.* at 1193.

Similarly, the solicitations at issue here were merely occasional. FNB does not allege that they are part of a business scheme directed specifically at Illinois. Moreover, there is no evidence to show that any of the solicitations resulted in any actual business transactions. These occasional solicitations are not enough to warrant general jurisdiction.

In fact, the only solicitation that resulted in an actual business transaction from an Illinois institution was the loan at issue. In that regard, the Court finds this case more comparable to *Griffith v. Wood Brothers*, 2004 WL 2418296, at *8. In *Griffith*, plaintiff was an Illinois citizen and the sole owner of a company that developed an automobile part that increases racing speed,

6

and defendants were Michigan and Virginia corporations with their principal places of business in North Carolina. *Id.* at *1. One defendant leased the part from plaintiff pursuant to an agreement that prohibited the "testing, altering, or defacing" of the part in any way. *Id.* Plaintiff filed suit in Illinois, alleging that the part was impermissibly used in the other defendant's car and returned to him in an altered condition. *Id.* The *Griffith* court held that "[t]he single contract entered into by [defendant] with an Illinois citizen is insufficient to satisfy the demanding standard required to establish general jurisdiction." *Id.* at *8. Likewise, El Camino's single contract with an Illinois bank is insufficient to establish general jurisdiction.

As for retaining Illinois counsel to settle a tax dispute in an Illinois court, this Court has previously held that, absent persuasive evidence to the contrary, involvement in an unrelated lawsuit will not support a finding of general jurisdiction. *See Travelers Cas.*, 304 F. Supp. 2d at 1025 (stating plaintiff "has not carried its burden by providing any authority whatsoever for the dubious proposition that general jurisdiction may be asserted on the basis of involvement in an unrelated lawsuit"); *see also Scheidler v. Nat'l Org. for Women*, 739 F. Supp. 1210, 1219 (N.D. Ill. 1990) ("[I]t is unclear to this court whether filing court papers and making court appearances in a case would ever constitute the 'transacting of business' for purposes of the Illinois long-arm statute."); 19 C.J.S. *Corporations* § 942 (2003) ("A corporation is not necessarily doing business in the state merely because it . . . initiates litigation in the state").

Thus, El Camino is not subject to Illinois' general jurisdiction. The single contract at issue, occasional solicitations, and tax litigation do not rise to the level of continuous and systematic general business contacts.

## B. Specific Jurisdiction

"Specific jurisdiction refers to jurisdiction over a defendant in a suit arising out of or related to the defendant's contacts with the forum." *RAR, Inc.*, 107 F.3d at 1277 (quotation omitted). To be subjected to the jurisdiction of a foreign forum, a defendant need only have sufficient "minimum contacts with it such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quotation omitted). "Jurisdiction is proper . . . where the contacts proximately result from actions by the defendant *himself* that create a substantial connection with the forum State." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (quotation omitted). Courts look to the defendant's "conduct and connection with the forum State" to determine if he should "reasonably anticipate being haled into court there." *World Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). "[A]n out-of-state party's contract with an in-state party is alone not enough to establish the requisite minimum contacts." *RAR, Inc.*, 107 F.3d at 1277. "'[P]rior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing' must indicate the purposeful availment that makes litigating in the forum state foreseeable to the defendant." *Id.* (quoting *Burger King*, 471 U.S. at 479).

FNB alleges this was "an Illinois secured transaction, solicited by [El Camino] in Illinois, consummated in Illinois by an Illinois Bank, brokered by an Illinois loan broker, and funded in Illinois." (Pl.'s Opp'n Def.'s Mot. Dismiss 7.) In addition, FNB asserts the following contacts between El Camino and Illinois: (1) both the CEO and CFO of El Camino traveled to Chicago in May 2004 to attend a three-day Equipment Leasing Association Conference, and solicited business from "five to six" Illinois lending institutions there; (2) El Camino directly solicited

8

financing in 2004 from two other Chicago banks; (3) El Camino solicited Sweeney, an Illinois broker, who contacted FNB about extending a loan to El Camino; (4) El Camino made "probably a multiple of [twenty]" phone calls to Sweeney, arranging this particular transaction; (5) El Camino sent approximately twenty emails to Sweeney; and (6) El Camino consummated the transaction by sending a half-executed copy of the loan documents to FNB for their execution. (Pl.'s Supplemental Opp'n Def.'s Mot. Dismiss 7-8.) Specifically with regard to Sweeney, FNB cites *Neiman, supra*, in support of its argument that El Camino "availed itself of Illinois' protections when it asked Sweeney to secure financing of the Cyberco leases in Illinois." (Pl.'s Opp'n Def.'s Mot. Dismiss 7.)

At the outset, El Camino's solicitation of Illinois lending institutions, its solicitation of other banks, and its contacts with Sweeney with regard to other banks are irrelevant for specific jurisdiction analysis. While these contacts may have been in an effort to fund the Cyberco lease transaction, they were not a part of this particular transaction between FNB and El Camino. "[I]t is only the dealings *between the parties in regard to the disputed contract* that are relevant to minimum contacts analysis." *RAR, Inc.*, 107 F.3d at 1278 (quotations omitted). The relevant question is whether, in the remaining contacts between El Camino and Illinois relating to the loan in dispute, this Court can find "some act by which the defendant purposefully avail[ed] itself of the privilege of conducting activities within [Illinois], thus invoking the benefits and protection of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958).

El Camino argues this is not an Illinois secured transaction because it is "a California corporation with its only offices and employees located in California, and the collateral serving as the loan security is located in Michigan." (Def.'s Reply Supp. Mot. Dismiss 5.) El Camino

9

also argues that *Neiman* is inapposite to a specific jurisdiction analysis because defendant never physically sent an employee into Illinois to target Illinois banks. (*Id.* 6.) In *Neiman*, plaintiff and the agent participated in a luncheon meeting in Illinois that "constitute[d] the bulk of the parties' negotiations about terms of the arrangement." 619 F.2d at 1192-93. The court found this contact with Illinois to be "very significant" because "a defendant's participation in one or two brief meetings in the forum state has been held sufficient for the exercise of personal jurisdiction when significant negotiation of important terms of the transaction occurs." *Id.* at 1194. Thus, the court, despite finding it lacked general jurisdiction, found specific jurisdiction to exist. *Id.* at 1195.

Similarly, in this case, Sweeney admits to driving to FNB's office to meet with William O'Hearn, FNB's Senior Vice President, to "meet him and deliver the Cyberco credit file." (Sweeney Decl. ¶ 4.) El Camino even acknowledges that "[d]uring negotiations, almost all of [El Camino's] contacts were with Mr. Sweeney." (Def.'s Mot. Dismiss 8.) Austin Wong, Chief Financial Officer of El Camino, states in his declaration that El Camino "had no direct contact with any of the banks." (Wong Decl. ¶ 8.) Thus, Sweeney was conducting negotiations on behalf of El Camino and, because Sweeney and FNB are both located in Illinois, those negotiations took place here.

However, the parties in *Neiman* stipulated that the agent was indeed acting as the corporation's agent with respect to the relevant events. 619 F.2d at 1190. This is important because "[t]he actions of agents are attributable to the principal for the purposes of establishing jurisdiction." *Cont'l Cas. Co. v. State of N.Y. Mortgage Agency*, No. 94 C 1463, 1994 WL 532271, at *7 (N.D. Ill. Sept. 26, 1994). No such stipulation occurred here. Thus, this Court

must determine whether Sweeney was acting as an agent of El Camino in securing this loan. In a footnote, El Camino argues that FNB failed to allege that Sweeney was acting as an agent of El Camino and that, at most, he should be considered a third party independent contractor. (Def.'s Reply Supp. Mot. Dismiss 6.) Sweeney asserts that he did not "act as El Camino's agent." (Sweeney Decl. ¶ 3.)

"Under Illinois law, 'the existence and scope of an agency relationship are questions of fact, to be decided by the trier of fact,' unless the relationship is 'so clear as to be undisputed.'" *Rankow v. First Chi. Corp.*, 870 F.2d 356, 359 (7th Cir. 1989) (quoting *St. Ann's Home for the Aged v. Daniels*, 420 N.E.2d 478, 481 (Ill. App. Ct. 1981)). Based on the particular facts of this case, Sweeney was clearly acting as an agent of El Camino in negotiating the loan agreement with FNB.

An analysis of the facts surrounding the particular case is necessary in determining the existence and scope of an agency relationship. *Rankow*, 870 F.2d at 359. In doing so, the trier of fact may make reference to the "situation of the parties, their acts, and other relevant circumstances." *Id.* (quotations omitted). For purposes of this analysis, it is important to note that "[a] broker is an agent who bargains or carries on negotiations on behalf of his principal as an intermediary between the latter and third persons in transacting business relative to the acquisition of contractual rights." *City of Chi. v. Barnett*, 88 N.E.2d 477, 480 (Ill. 1949).

In *Petty v. Cadwallader*, 482 N.E.2d 225 (Ill. App. Ct. 1985), plaintiff, an Illinois loan broker, sued defendants, Indiana residents, for breach of contract. Defendants asserted that Illinois courts lacked jurisdiction because the complaint failed to allege they were ever in Illinois or transacted business here. *Id.* at 227. The *Petty* court held that defendants utilized a go-

between person that "became an agent of defendants for the purposes of obtaining the loan commitment." *Id.*

So it is here. El Camino retained Sweeney's services for the purposes of securing loans for the Cyberco Lease Transactions. El Camino even admits that they "contacted Mr. Sweeney in Illinois to generally solicit financing for three lease transactions." (Def.'s Mot. Dismiss 8.) El Camino further admits Sweeney conducted negotiations on their behalf. (*Id.* 8; Wong Decl. ¶ 8.) Sweeney thus became the agent of El Camino for the purposes of obtaining the loan commitment from FNB.

Finding that Sweeney was an agent of El Camino for the purposes of this loan and that he participated in the requisite negotiations with FNB is seemingly enough to subject El Camino to Illinois' specific jurisdiction. However, "[i]n determining whether the defendant purposefully availed itself of a particular forum for purposes of the Fourteenth Amendment, courts in this circuit have considered whether the defendant solicited the transaction in question within the proposed forum." *Federated Rural Elec. Ins. Corp. v. Inland Power & Light Co.*, 18 F.3d 389, 394 (7th Cir. 1994). The parties disagree as to who initiated the communication. FNB, through the declaration of its Senior Vice President, William D. O'Hearn, asserts that Sweeney "contacted [O'Hearn] in an attempt to obtain financing for a lease transaction with Cyberco Holdings, Inc." (O'Hearn Decl. ¶ 2.) El Camino, through Sweeney's declaration, alleges that O'Hearn, in an effort to expand FNB's equipment leasing loan portfolio, "telephoned [Sweeney] and told [him] that he was referred to [him] by another bank." (Sweeney Decl. ¶ 3.) Thus, because the Court must resolve all factual disputes in the affidavits in FNB's favor, *see RAR, Inc.*, 107 F.3d at 1275, for purposes of this motion, Sweeney solicited FNB.

12

This result also satisfies the other half of the specific jurisdiction test as it is consistent with traditional notions of fair play and substantial justice. While it is unfortunate that defendant has become caught up in a nationwide scam, this does not control the Court's personal jurisdiction analysis. "Illinois has a substantial interest in enforcing contracts involving Illinois citizens negotiated in this state." *Marine Retailers Ass'n of Am. v. S. Exposition Mgmt. Co.*, No. 96 C 2502, 1996 WL 507279, at *3 (N.D. Ill. Sept. 4, 1996). Moreover, "Illinois citizens have a substantial interest in seeking such redress in the courts of Illinois." *Id.*

In sum, the Court denies El Camino's motion to dismiss for lack of personal jurisdiction. Although general jurisdiction does not exist in this case, El Camino's (through Sweeney as its agent) solicitation of and negotiations with FNB provide a sufficient basis for specific jurisdiction.

## II. Motion to Transfer

A federal district court may "[f]or the convenience of parties and witnesses, and in the interest of justice, . . . transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). Transfer is appropriate when "(1) venue was proper in the transferor district, (2) venue and jurisdiction would be proper in the transferee district, and (3) the transfer will serve the convenience of the parties and the witnesses as well as the interests of justice." *Federated Dep't Stores, Inc. v. U.S. Bank Nat'l Ass'n*, No. 00 C 6169, 2001 WL 503039, at *1 (N.D. Ill. May 11, 2001).

## A. Both Illinois and California Are Proper Venues

The Court has found that it has personal jurisdiction over El Camino. Because El Camino's agent solicited FNB and negotiated the contract at issue while in Illinois, substantial parts of the events giving rise to the claim occurred here. Thus, venue is proper in Illinois.

Venue is also proper in California because, in diversity cases, jurisdiction is proper in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(a). El Camino is a California corporation. The substance of FNB's claim arises from El Camino's alleged breach of their security agreement. Any omission on the part of El Camino occurred in California. Clearly, FNB could have brought this action in California had they chosen to do so. Thus, for purposes of this motion, venue is also appropriate in California.

## B. Convenience of Parties and Interests of Justice

In determining whether the transfer will actually serve the convenience of the parties and witnesses and the interests of justices, courts analyze the private interests of the parties and the public interests of the court. *Federated*, 2001 WL 503039, at *2. The factors relevant to considering the parties' private interests are: "(1) plaintiff's choice of forum, (2) the situs of the material events, (3) the relative ease and access to sources of proof, (4) the convenience of the parties and (5) the convenience of the witnesses." *Id.* Public interest factors include "the court's familiarity with the applicable law, the speed at which the case will proceed to trial, and the desirability of resolving controversies in their locale." *Id.* These public interest factors "may be determinative in a particular case, even if the parties and witnesses might call for a different

14

result." *Id.* (quotation omitted). The party seeking transfer "has the burden of establishing, by reference to particular circumstances, that the transferee forum is clearly more convenient." *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 220 (7th Cir. 1986).

### 1. Private Factors

#### a. Plaintiff's Choice of Forum

Generally, a plaintiff's choice of forum is given substantial weight when, as here, it is the plaintiff's home forum. *Macedo v. Boeing Co.*, 693 F.2d 683, 688 (7th Cir. 1982). However, this deference is not absolute and the weight given to the plaintiff's choice of forum can vary depending upon the circumstances of each case. *Id.* Thus, "where the plaintiff's choice of forum is not the site of material events, plaintiff's choice of forum is entitled less deference." *Am. Family Ins. ex rel. Suddarth v. Wal-Mart Stores, Inc.*, No. 02 C 8017, 2003 WL 1895390, at *1 (N.D. Ill. Apr. 17, 2003); *see Heller Fin., Inc. v. Riverdale Auto Parts, Inc.*, 713 F. Supp. 1125, 1129 (N.D. Ill. 1989). Therefore, to determine the appropriate amount of deference to be accorded plaintiff's choice of forum, the situs of material events must be determined.

#### b. Situs of Material Events

"[I]n a breach of contract case, the situs is where the business decisions causing the breach occurred . . . ." *Hyatt Corp. v. Personal Commc'ns Indus. Ass'n*, No. 04 C 4656, 2004 WL 2931288, at *3 (N.D. Ill. Dec. 15, 2004). El Camino's business decisions with regard to its failure to comply with the provisions of the security agreement occurred in California. Because the situs of material events was in California, FNB's choice of forum is given less deference.

15

The situs of material events factor weighs in favor of transferring this case to California.

**c. Relative Ease and Access to Sources of Proof**

El Camino asserts that all documents related to the transaction are located in California. While El Camino's records may be located in California, FNB's are no doubt located here in Illinois. Any records related to this transaction that are not currently in possession of FNB at their office will be easily transferable. When documents are easily transferable, access to proof is a neutral factor. *Stanley v. Marion*, No. 04 C 514, 2004 WL 1611074, at *3 (N.D. Ill. Jul. 16, 2004). Accordingly, this factor weighs neither for nor against transfer.

**d. Convenience of the Parties**

This factor concerns the parties' "respective residences and abilities to bear the expense of trial in a particular forum." *Medi USA v. Jobst Inst., Inc.*, 791 F. Supp. 208, 210 (N.D. Ill. 1992). El Camino asserts that the strain of litigating this matter in another state will be greater on them than on FNB because El Camino is a small privately-owned company with nine employees that transacts business solely in California, while FNB is a large, nationally chartered bank. (*Id.*) FNB, on the other hand, argues that it is a local bank with no employees in California. (Pl.'s Opp'n. Def.'s Mot. Dismiss 10.) While it may be slightly more difficult for El Camino to litigate this matter in Illinois than for FNB to litigate it in California, a "motion to transfer cannot be used simply to shift the one party's inconvenience onto another party." *I.P. Innovation, L.L.C. v. Lexmark Int'l, Inc.*, 289 F. Supp. 2d 952, 955 (N.D. Ill. 2003). This factor is, therefore, neutral.

e. **Convenience of the Witnesses**

The convenience of the witnesses is often the most important factor in determining whether to grant a motion to transfer. *Federated*, 2001 WL 503039, at *4. More weight is afforded non-party witnesses than witnesses within the control of the parties, as it is presumed that party witnesses will appear voluntarily. *Am. Family*, 2003 WL 1895390, at *2. In assessing this factor, the number of witnesses located in each forum and the importance of each witness' testimony must be considered. *Federated*, 2001 WL 503039, at *4. In addition, courts may consider the "the availability of compulsory process for the attendance of unwilling witnesses and the costs of obtaining the attendance of the witnesses." *Biomet, Inc. v. Stryker Howmedica Osteonics Corp.*, No. 03 C 6491, 2004 WL 769358, at *6 (N.D. Ill. Apr. 9, 2004). The party seeking transfer must specify the key witnesses to be called and make a generalized statement of their testimony. *Federated*, 2001 WL 503039, at *4. The burden is on the moving party to show that the testimony of these particular witnesses is necessary to his case. *Am. Family*, 2003 WL 1895390, at *2.

El Camino identifies two party witnesses, David Harmon and Austin Wong, and one non-party witness, Chiara Medicina, all of whom are California residents. (Def.'s Mot. Dismiss 15.) According to El Camino, Ms. Medicina oversaw the relationship between El Camino and Cyberco and the intermediary brokers who obtained financing for the transactions. (*Id.*) She will testify regarding the dealings between El Camino, Cyberco and other financing sources. (*Id.*) Interestingly, El Camino does not identify Sweeney, an Illinois resident. However, FNB makes it clear that Sweeney will "undoubtedly" be called as a key witness. (Pl.'s Opp'n Def.'s Mot. Dismiss 10.) FNB also alludes to the Declaration of William O'Hearn, in which ten members of

two different bank loan committees are identified. (*Id.*, O'Hearn Decl. ¶¶ 3-4.) FNB makes no effort to detail why ten members of two different bank loan committees will be necessary to testify. However, the burden of identifying key witnesses falls upon the moving party, El Camino in this case, and it has failed to convince the Court that the inconvenience to its witnesses warrants transfer.

While El Camino points out that Ms. Medicina is an independent contractor and is outside this court's subpoena power, the other witnesses they intend to call are simply party witnesses. Party witnesses are certainly given some weight, but no more weight is accorded El Camino's party witnesses than FNB's party witnesses. Moreover, while Sweeney was acting as El Camino's agent for the purposes of negotiating the Cyberco lease transactions with FNB, there is no indication that he is presently acting as their agent. Thus, he is also a non-party witness, and this Court can place no more weight on Ms. Medicina's inconvenience than on Sweeney's. This factor is neutral.

## 2. Public Factors
### a. Speed to Trial

In evaluating this factor, the court looks to the Federal Court Management Statistics to determine "(1) the median months from filing to disposition and (2) the median months from filing to trial." *Federated*, 2001 WL 503039, at *5 (quotation omitted). Accordingly, for the twelve-month period ending September 30, 2005, the median time from filing to disposition in civil cases was 6.9 months in the Northern District of Illinois and 7.4 months in the Central District of California. FEDERAL COURT MANAGEMENT STATISTICS (2005), *available at*

http://www.uscourts.gov/cgi-bin/cmsd2005.pl. The median time from filing to trial was twenty-seven months in the Northern District of Illinois but only 20.5 months in California. Accordingly, this factor weighs slightly in favor of transfer.

### b. Familiarity with Applicable Law

Generally, in diversity cases, it is "advantageous to have federal judges try a case who are familiar with the applicable state law." *Coffey*, 796 F.2d at 221. However, "where the law in question is neither complex nor unsettled, the interests of justice remain neutral between competing courts." *Sitrick v. Freehand Sys., Inc.*, No. 02 C 1568, 2003 WL 1581741, at *5 (N.D. Ill. Mar. 27, 2003); *see also Amoco Oil Co.*, 90 F. Supp. 2d at 962 (noting that "contract law is not particularly complex" and is well within the comprehension of a foreign forum.). Given that the contract entered into by FNB and El Camino provided for disputes to be governed by Illinois law, (*see* Compl., Ex. A, Non-Recourse Promissory Note), and that Illinois contract law is not particularly unsettled or complex, this factor is neutral.

### c. Relationship of Communities to Litigation

"Resolving litigated controversies in their locale is a desirable goal of the federal courts." *Doage v. Bd. of Regents*, 950 F. Supp. 258, 262 (N.D. Ill. 1997). "Illinois has a strong interest in providing its residents with a convenient forum for redressing injuries inflicted by out-of-state-actors." *Tranzact Techs., Inc. v. ISource Worldsite*, No. 01 C 8508, 2002 WL 122515, at *6 (N.D. Ill. Jan. 30, 2002). El Camino argues that because this controversy is intimately connected with California and there are two other banks likely to sue El Camino for default due to the

19

Cyberco loan transaction, these cases all belong in California. If, in fact, El Camino was the victim of a massive scam perpetrated by Cyberco, then California certainly has a vested interest in ensuring its corporations are protected. Illinois, however, has an equally vested interest in ensuring that its banks have a proper forum to seek recovery in the event of a default on a loan. This factor weighs neither for nor against transfer.

In sum, only two of the many factors weigh in favor of transfer: the situs of material events and the speed to trial. These factors in and of themselves are insufficient to grant the motion to transfer. Thus, the Court denies the motion.

## Conclusion

For the foregoing reasons, the Court denies defendant's motion to dismiss for lack of personal jurisdiction pursuant to Federal Rules of Civil Procedure 12(b)(2) and (3) and motion to transfer venue pursuant to 28 U.S.C. § 1404(a).

**SO ORDERED**                ENTERED: 8/16/06

HON. RONALD A. GUZMAN
United States Judge